## MABEL NOLAND BRAMLETT v. STATE OF NEBRASKA.

FILED MAY 24, 1935. No. 29326.

*Fried & Mars,* for plaintiff in error.

*William H. Wright, Attorney General,* and *Paul P. Chaney, contra.*

Heard before GOSS, C. J., ROSE, GOOD, EBERLY, DAY, PAINE and CARTER, JJ.

PAINE, J.

The defendant was prosecuted in Douglas county for aiding, abetting, encouraging, and contributing to the delinquency of June Campbell, a delinquent child, 14 years of age. The jury returned a verdict of guilty, and she was sentenced to four months in the county jail, and, in addition, required to pay a fine of $100 and costs.

The motion for a new trial is based upon several

grounds, only one of which will be considered. The defendant claims that the trial court erred in refusing to set aside the verdict and grant a new trial because of the misconduct of the bailiff in the jury room while the jury were deliberating. In the bill of exceptions there appear two affidavits by two of the jurymen. The first of these affidavits is by R. D. Zimmerman, who states that, after the jury had been deliberating for some time as to the guilt or innocence of the defendant, the bailiff in charge of the jury came into the jury room and said to Ole A. Lerdahl, a member of the jury, who was holding out for acquittal, and in the presence of all the jury, "What the hell is the matter with you, get busy," and that the jury came in with their verdict about three-quarters of an hour later.

The other affidavit is signed by Ole A. Lerdahl, which sets out that he had been in favor of acquitting the defendant, and that the bailiff in charge of the jury at about 1 p. m. on Friday, May 18, 1934, came into the jury room and said to the affiant, in the presence of all the jurors, "You're not going to hold them back alone, are you?" and then said, "The judge will be here about 2 o'clock and then will be gone all afternoon." The state neither offered nor introduced any evidence in opposition thereto.

Let us consider a few of the cases involving such matters. In *Williams v. Chicago & N. W. R. Co.,* 11 S. Dak. 463, there was no fire in the courthouse except in the jury room, and between 2 and 3 o'clock in the morning a juror invited the bailiff to come into their room and get warm, as the night was bitterly cold. The bailiff came in and laid down on the floor near the door. He did not talk to any juror, nor were any of the jurors near him. No juror communicated with him by word, sign, letter, or otherwise, while he was in the room, nor did the jury take a vote while he was in the room. When he got warm he went out and locked the door behind him. It was held that nothing in the action or conduct of the bailiff or the jury warranted a new trial.

In *Hampton v. Van Nest's Estate,* 196 Mich. 404, during

the deliberations of a jury the sheriff, who had charge of them, was called to the jury room, which was the town hall, consisting of one room, to replenish the fire and furnish water for the jurors. He heard no part of their conversation and entered into no conversation between them. It was held that the presence of the sheriff was within the line of his duties, and that he violated no part of the spirit of his oath. However, it was further held in this case: "The court should not countenance or tolerate any act or conduct by court officers that might influence the conduct of any member of the jury in favor of either party in reaching conclusions in the case they are considering."

The jury are to be protected from hearing prejudicial conversations in public places while deliberating. In *Curry v. Willson & Sons*, 301 Pa. St. 467, it appeared that, while jurors were eating in a restaurant, attorneys not engaged in the trial of the case were discussing the probable size of the verdict. However, upon affidavit that the jurors did not hear the discussion by the attorneys, the motion for a new trial was overruled.

Even the judge himself is not supposed to hold private conversation with the jury. "Trial judge's conversation with jurors while deliberating, in absence of respective counsel, held prejudicial error." *Tawzer v. McAdam*, 7 Pac. (2d) 516 (134 Kan. 596).

In a prosecution for receiving stolen property, the jury had some trouble with the subtleties of the law, and after deliberating many hours signified a desire for further information. The jury were brought into the jury box, and a conversation took place between the jury and the court in the presence of the attorneys. No objection was made to this proceeding, but after the jury had retired the trial judge went to the jury room, put his head in the door, and held a conversation with them. The supreme court of Kansas said: "The conduct exhibited was, however, highly improper. Throughout the proceeding in a criminal case the trial judge's place is on the bench. The jury room is a place of seclusion and privacy for members of the jury

while they are deliberating on their verdict. The trial judge has no privilege to invade it, and all his communications with the jury ought to be in open court." *State v. Scholl*, 118 Kan. 629. If the jury are to be free from the influence of a conversation with the trial court, how much more important that they be shielded from the comments of a bailiff!

In Nebraska we have a statute which clearly covers this case. Section 20-1109, Comp. St. 1929, provides, among other things, that, when the case is finally submitted to the jury and they retire to deliberate, they must be kept together in some convenient place, under the charge of an officer, until they agree upon a verdict or are discharged by the court, and further, "The officer having them under his charge shall not suffer any communication to be made to them, or make any himself, except to ask them if they have agreed upon their verdict, unless by order of the court, and he shall not, before the verdict is rendered, communicate to any person the state of their deliberations or the verdict agreed upon."

There are always to be found officious bailiffs, who often carry messages back and forth to the members of the jury, or lecture the jury as to their duty, and who bring about mistrials by their conduct. In *Olsen v. State*, 113 Neb. 69, we have such a case, where one such bailiff volunteered the information to the jurors, just before closing the room for the jury to begin their deliberations, that the wife of one of the jurors, naming him, would spend the night at the home of the prosecuting attorney. The trial judge had just administered the oath to this bailiff as to his duties as founded upon the above section of our statute, and, without the knowledge of the judge, this bailiff volunteered this gossip to the jury, which required this court to reverse a conviction in a felony case which had taken days to try.

We are unwilling to lend encouragement to the lax conduct of a bailiff which, if tolerated, would undermine the purity and efficiency of our jury system. "The verdict of a jury * * * should represent the concurring judgment,

reason and intelligence of. the entire jury, free from outside influence from any source whatever." *Trantham v. Elk Furniture Co.,* 194 N. Car. 615.

The judgment and sentence are set aside, and a new trial is ordered.

REVERSED.